Debra C. **EVANS** and Mitchell
B. Evans, Plaintiffs,

v.

**VISUAL TECHNOLOGY INCORPORATED, and Lockheed Corporation, a/k/a Delaware Lockheed, Defendants.**

Debra C. **EVANS** and Mitchell
B. Evans, Plaintiffs,

v.

**ONTEL CORPORATION, Defendant.**

Nos. 91–CV–0685(NPM),
92–CV–0358(NPM).

United States District Court,
N.D. New York.

Feb. 19, 1997.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria L.L.P. (Neil J. McKinnon, Michael A. Ponterio, of counsel), Buffalo, NY, for Plaintiffs.

Cozen & O'Connor (William P. Shelley, Richard C. Mason, of counsel), Philadelphia, PA, for Defendants Visual Technology Inc. and Ontel Corp.

Peltz & Walker (Alexander Peltz, of counsel), New York City, for Lockheed Corp. a/k/a Delaware Lockheed.

Hiscock & Barclay, L.L.P. (Robert A. Barrer, of counsel), Syracuse, NY, for Lockheed Corp. a/k/a Delaware Lockheed.

### MEMORANDUM–DECISION & ORDER

McCURN, Senior District Judge.

### I. BACKGROUND

In these products liability and negligence actions,[1] plaintiff Debra C. Evans alleges that she suffered repetitive stress injuries ("RSI") from the use of keyboard equipment manufactured, sold and distributed by defendants. Plaintiff Mitchell B. Evans, Ms. Evans' husband, alleges separate causes of actions for loss of consortium.[2] The court maintains jurisdiction over these actions pursuant to 28 U.S.C. § 1332, diversity of citizenship.

---

1. Plaintiffs commenced three separate actions against the defendants as follows: Visual Technology on June 20, 1991; Ontel Corporation on March 20, 1992; Lockheed Corporation a/k/a Delaware Lockheed on May 12, 1992; and Key Tronic Corporation on July 16, 1992. The three actions were consolidated by order of this court pursuant to Fed.R.Civ.P. 42(a).

Presently before the court are defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing plaintiffs' complaints as barred by the applicable statute of limitations. Plaintiffs oppose the motions of defendants Visual Technology Incorporated ("Visual Technology"), Ontel Corporation ("Ontel") and Lockheed Corporation a/k/a Delaware Lockheed ("Lockheed"), but do not oppose Key Tronic Corporation's ("Key Tronic") motion. On September 16, 1996, the court granted defendant Key Tronic's unopposed motion for summary judgment. On December 20, 1996, the court heard oral argument on the remaining motions and reserved decision. For the reasons set forth herein, the court now grants defendants Ontel's and Lockheed's motions for summary judgment and denies defendant Visual Technology's motion for summary judgment.

### II. DISCUSSION

As a federal court sitting in diversity, the court must apply the law of the forum state to determine the applicable statute of limitations. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 80, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938); *Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 650 (2d Cir.1994). Here, the forum state is New York. Therefore, the court looks to New York law to determine the applicable statute of limitations. *See, e.g., Guaranty Trust Co. v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).

In New York, the statute of limitations for products liability and negligence actions is governed by sections 203(a) and 214(5) of the Civil Practice Law and Rules. N.Y.C.P.L.R. § 203(a) and § 214(5) (McKinney 1990). These sections provide that an action for personal injury must be commenced within three years "from the time the cause of action accrued." *Id.; see Snyder v. Town*

---

2. For ease of reference, the term plaintiff as used herein will generally refer solely to plaintiff Debra C. Evans and not to plaintiff Mitchell B. Evans.

*Insulation, Inc.,* 81 N.Y.2d 429, 432, 599 N.Y.S.2d 515, 516, 615 N.E.2d 999, 1000 (1993).

■ The determination of accrual in an RSI case is presently unsettled under New York law. *Compare Piper v. International Bus. Mach. Corp.,* 219 A.D.2d 56, 639 N.Y.S.2d 623 (4th Dep't 1996), *and Coughlin v. International Bus. Mach. Corp.,* 225 A.D.2d 256, 650 N.Y.S.2d 477 (3d Dep't 1996), *with Blanco v. American Tel. & Tel. Co.,* 223 A.D.2d 156, 646 N.Y.S.2d 99 (1st Dep't 1996). Therefore, it is this court's obligation to predict how the New York Court of Appeals would decide this issue if faced with the same question. *See Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir.1994). In predicting how the New York Court of Appeals would rule, the court may examine decisions of the lower New York courts. *See In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831, 850 (2d Cir.1992) ("Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts."). The court, however, is not bound by such decisions, especially where the court determines that the high court would not adopt the rationale of such lower courts. *See id.* ("federal court is not bound by lower state court decisions") (citation omitted); *Bank of New York,* 35 F.3d at 650; *Travelers,* 14 F.3d at 119.

■ An action accrues when a plaintiff can allege all of the legal elements that would allow her to seek redress for her injuries. *See Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 293 (1993) ("[t]he Statute of Limitations does not run until there is a legal right to relief."). In other words, an action does not accrue until a plaintiff properly can allege all the elements of her cause of action. *See id.* ("accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint."). Until that time, a plaintiff's cause of action cannot be said to accrue. *See Snyder,* 81 N.Y.2d at 432, 599 N.Y.S.2d at 516, 615 N.E.2d at 1000.

■ As a general proposition, a cause of action sounding in tort "does not accrue until an injury is sustained." *Snyder,* 81 N.Y.2d at 432, 599 N.Y.S.2d at 516, 615 N.E.2d at 1000; *see Kronos,* 81 N.Y.2d at 92, 595 N.Y.S.2d at 932, 612 N.E.2d at 290 ("Plaintiff had no cause of action, and the Statute of Limitations could not start to run, until plaintiff suffered injury."); *Martin v. Edwards Laboratories,* 60 N.Y.2d 417, 425, 469 N.Y.S.2d 923, 927, 457 N.E.2d 1150, 1154 (1983) (" '[A] cause of action accrues only when the forces wrongfully put in motion produce injury.' ") (citation omitted). As the New York Court of Appeals long ago observed, "[t]hough negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted, ... [i]t is only the injury to person or property arising from negligence which constitutes the invasion of a personal right, protected by law, and, therefore, an actionable wrong." *Schmidt v. Merchants Despatch Transp. Co.,* 270 N.Y. 287, 300, 200 N.E. 824. (1936). It is this date of injury, "rather than the wrongful act of defendant or discovery of the injury by plaintiff," that "is the relevant date for marking accrual." *Kronos,* 81 N.Y.2d at 94, 595 N.Y.S.2d at 934, 612 N.E.2d at 292; *see Schmidt,* 270 N.Y. at 300, 200 N.E. 824 ("[T]he statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury.").

■ While these general principles are easily stated, their application can sometimes present difficulties for courts, especially in a case such as this where a plaintiff has no way of learning of the date of her injury or where the date of injury is difficult to ascertain. In the instant case, the issue with which the court is confronted—when does a cause of action for an RSI case accrue—is difficult because of the nature of the injuries suffered by the plaintiff. In RSI cases, unlike other cases where the date of injury is readily determinable, there is simply no precise way to determine the exact date of the injury. In the instant case, as a prerequisite to determining the date of accrual of these actions, the court must determine, as a matter of law, what is the date of injury in an RSI case. In this regard, the court is mindful that the

injury is not to be confused with the disease or the ailment that results from the injury. *See Snyder,* 81 N.Y.2d at 434, 599 N.Y.S.2d at 517, 615 N.E.2d at 1001 ("Disease was a consequence of the injury, ... not the injury itself"); *Kronos,* 81 N.Y.2d at 94, 595 N.Y.S.2d at 934, 612 N.E.2d at 292; *Schmidt,* 270 N.Y. at 300, 200 N.E. 824.

█ In determining the accrual date of a cause of action, New York courts attempt to strike a balance between fairness to a plaintiff to allow her reasonable time to pursue her claim with the fairness to defendants to respond to claims without inappropriate or prejudicial delays. *See Martin,* 60 N.Y.2d at 425, 469 N.Y.S.2d at 927, 457 N.E.2d at 1154 ("When limitations begin to run depends on a nice balancing of policy considerations") (citations and quotations omitted); *Flanagan v. Mount Eden Gen. Hosp.,* 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969) (Court departed from traditional malpractice rule and adopted a discovery rule because a fair assessment of the policy considerations dictated such a result).

The court here is being asked to choose between competing positions advanced by the parties. At one end of the spectrum, plaintiff urges this court to adopt the date of medical diagnosis as the date of accrual. At the other end of the spectrum, defendants Ontel and Visual Technology vigorously urge this court to adopt the date of first use of an allegedly defective keyboard as the date of accrual. As will be discussed, the court declines to adopt either position advanced by these parties because the court is unpersuaded that the New York Court of Appeals will adopt either of them. Rather, the court will adopt a comprise position advanced by several lower New York courts which, under the unique facts of RSI cases, adequately affords a plaintiff the reasonable opportunity to assert her claim without undue prejudice or delay to defendants.

In support of her position, plaintiff maintains that because her particular RSI injury, carpal tunnel syndrome, is a continuous and medically diagnosable condition, "it cannot be said that a plaintiff has sustained any injury until a medical doctor has made a determination that carpal tunnel syndrome exists." Plaintiffs' Memorandum of Law at 7. Plaintiff further asserts that since her carpal tunnel syndrome in her left hand was not diagnosed until after July 29, 1988, defendant Visual Technology's motion should be denied. Additionally, plaintiff asserts that since her carpal tunnel syndrome in her right hand was not diagnosed until after June 6, 1989, the court should deny the motions for summary judgment by defendants Visual Technology, Ontel and Lockheed.

The court rejects plaintiff's position that the action does not accrue until the injury is diagnosed because the position is untenable and not supported by New York law.[3] *See Schmidt,* 270 N.Y. at 300, 200 N.E. 824 (court rejected onset of disease for the accrual date as determined by medical testimony); *cf. Consorti v. Owens–Corning Fiberglas Corp.,* 86 N.Y.2d 449, 451–452, 634 N.Y.S.2d 18, 19, 657 N.E.2d 1301, 1302 (1995). Furthermore, if the court adopted plaintiff's position, a plaintiff would be able to toll the running of the statute of limitations until she received a medical diagnosis of her injury. This would be true regardless of when a plaintiff was first aware of her injuries or regardless of when a plaintiff last came into contact with an allegedly offending product.

Contrary to plaintiff's position, defendants Visual Technology and Ontel urge the court to measure the accrual date from the plain-

---

**3.** Plaintiff relies heavily on the New York Supreme Court decision of *Falasca v. IBM,* Index No. 93–15224 (N.Y.Sup.Ct., Westchester County, Oct. 19, 1995), as authority for her position. While the *Falasca* court stated that plaintiff's medical expert "diagnosed" plaintiff's carpel tunnel syndrome within three years of the filing of the complaint, it also observed that "proof to connect the earlier symptoms [of arthritis and a ganglion cyst] with the present condition through sound medical evidence is lacking." *Id.* slip op. at 1. Therefore, the court did not necessarily establish that plaintiff's action accrued from the date of the diagnosis. *See id.* Rather, the court indicated that defendant failed to meet its burden of showing that plaintiff had symptoms connected to the plaintiff's carpal tunnel syndrome beyond the three year limitations period. *See id.* This reading of *Falasca* is buttressed by the court's explicit recognition of the "onset of symptoms" rule. *Id.* Accordingly, this court does not read *Falasca* to hold that a RSI plaintiff's action accrues from the date of diagnosis.

tiff's first date of use of the keyboard, relying upon *Blanco v. American Tel. & Tel.,* 223 A.D.2d 156, 646 N.Y.S.2d 99. In *Blanco,* the Appellate Division, First Department, held "that each plaintiff's cause of action accrued upon the commencement of their use of the allegedly defective keyboard.". *Id.* at 164, 646 N.Y.S.2d at 104. This court is unpersuaded that the New York Court of Appeals will adopt the *Blanco* rationale because to do so would mean that the statute of limitations would begin to run from the very first use of the keyboard, regardless of the frequency or intensity of its use. *See id.*

As noted above, it is well settled that an action cannot accrue until the plaintiff can maintain a legally enforceable claim. *See Kronos,* 81 N.Y.2d at 94, 595 N.Y.S.2d at 934, 612 N.E.2d at 292. If the court were to hold a plaintiff's action accrues the very first time she strikes an allegedly defective keyboard, then, at that moment, she must be able to maintain an action in which she can truthfully allege all of the elements of her claim. In RSI cases, however, a plaintiff cannot maintain such an action because, without sustaining an injury, she would be incapable of truthfully alleging that she suffered an injury.[4] The very nature of a repetitive stress

injury is, as its name implies, that the injury results from repetitive and stressful tasks over a period of time. In fact, it is entirely possible that a plaintiff may never develop a repetitive stress injury from continued and repetitious use of a keyboard. Therefore, the court concludes that a plaintiff's cause of action has not accrued for purposes of the statute of limitations at the first use of an allegedly defective keyboard.[5] *See Piper,* 219 A.D.2d at 61–62, 639 N.Y.S.2d at 626 ("there is no basis for measuring accrual from plaintiff's first use of the computer equipment."); *see also Dorsey v. Apple Computers, Inc.,* 936 F.Supp. 89, 92 (E.D.N.Y. 1996) (the decision in *Blanco* "cannot be accepted as an accurate statement of New York law."). To conclude otherwise "simply places an undue strain upon common sense, realty [sic], logic and simple justice." *See generally Flanagan,* 24 N.Y.2d at 431, 301 N.Y.S.2d at 26, 248 N.E.2d at 874.

The court additionally declines to follow the *Blanco* rationale because the cases relied upon by the *Blanco* court in support of its rationale are distinguishable from an RSI case, and therefore not directly applicable. *Blanco,* 223 A.D.2d at 162–165, 646 N.Y.S.2d at 103–105. In *Blanco,* the court relied pri-

4. Despite defendants Ontel and Visual Technology's contention, *Schmidt,* 270 N.Y. 287, 200 N.E. 824, does not support a contrary conclusion. In *Schmidt,* the Court of Appeals held that plaintiff's action could have been commenced immediately after plaintiff's initial exposure to coal dust despite acknowledging that the disease "might be delayed, or, perhaps, even by good fortune averted." *Schmidt,* 270 N.Y. at 301, 200 N.E. 824. Critical to the Courts analysis in *Schmidt* was its determination that plaintiff's injury was complete when he initially inhaled the coal dust. *Id.; see also Snyder,* 81 N.Y.2d at 433, 599 N.Y.S.2d at 517, 615 N.E.2d at 1001. (Court reiterated that in *Schmidt,* the Court concluded "the injury was complete at the moment the dust was inhaled"). Based on this determination, the Court concluded that it "cannot be doubted that the plaintiff might have begun an action against the defendant immediately after he inhaled the dust which caused the disease." *Id.* Here, however, *Schmidt* does not support defendants' contention that an RSI action can be commenced immediately upon first striking an allegedly defective keyboard because the court is unpersuaded that an injury is sustained at the instant the plaintiff strikes a keyboard.

5. During oral argument, counsel for Lockheed and Visual Technology disputed the proposition

that a plaintiff has not suffered an injury upon first striking an offending keyboard. Counsel stated that "microtraumas occur upon first contact with and [sic] each contact with the key, and that the repetitive pounding of the keyboard with each finger each time it happens causes a separate small injury which cumulatively results in the disease of repetitive stress injury." Transcript of Hearing, December 20, 1996 ("Tr.") at 18. Counsel further stated this evidence of "microtraumas" was before the *Blanco* court and was relied upon by the court to reach its decision. *Id.* If counsel's argument is correct, and a "microtrauma" results from the very first strike of a keyboard, then it would give this court considerable pause before rejecting the *Blanco* rationale. Counsel's microtrauma argument is not without its problems, however. First, on this motion for summary judgment, there is nothing in admissible form for the court to consider with respect to this microtrauma theory. Second, if the microtrauma theory was "the common expert testimony that ran through [the *Blanco*] cases," as submitted by counsel, the *Blanco* court declined to comment upon this theory and this court cannot speculate that this is what the *Blanco* court based its decision upon. *Id.*

marily on toxic tort cases—which traditionally held an injury occurs at the initial exposure to an offending substance—for the proposition that in an RSI case the action accrues upon the commencement of the use of the keyboard. *See id.* In toxic tort cases under New York law, however, the injury indeed does occur at the initial exposure, even though the damages stemming from such exposure may not manifest themselves until many years later, if at all. By contrast, in an RSI case, the injury does not occur upon first striking a keyboard. Moreover, unlike the toxic tort exposure cases, an RSI case does not present a situation where "the forces of harm [were] inexorably set in motion" when plaintiff was first exposed to the alleged injury-causing product. *Martin,* 60 N.Y.2d at 427, 469 N.Y.S.2d at 928, 457 N.E.2d at 1155. The court therefore declines to apply the *Blanco* holding to the instant case because the court does not believe the New York Court of Appeals will adopt its rationale given the distinction between toxic tort cases and RSI cases.[6]

In contrast to the two extreme positions taken by the parties here, the Appellate Division, Fourth Department, in *Piper v. International Bus. Mach. Corp.,* 219 A.D.2d 56, 639 N.Y.S.2d 623, thoroughly analyzed New York law with respect to the issue of accrual in an RSI case and concluded that the date of accrual should be measured from the date of the onset of symptoms (*i.e.,* a "date of injury rule"). *Id.* at 59–61, 639 N.Y.S.2d at 625–626. Under a date of injury rule, a plaintiff's cause of action accrues for statute of limitations purposes at the earlier of two dates, the date the plaintiff develops symptoms of an injury or the date of the last use of the keyboard. *See id.; Wallen v. American Tel. & Tel. Co.,* Index No. 91–12336 (N.Y.Sup.Ct., N.Y. County, Sept. 17, 1992), *aff'd,* 195 A.D.2d 417, 601 N.Y.S.2d 796 (for the reasons stated by Supreme Court), *leave to appeal denied,* 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 (1993); *see also Dorsey,* 936

F.Supp. 89 (federal court applying New York law adopts date of injury test); *Parajecki v. International Bus. Machs. Corp.,* 899 F.Supp. 1050 (E.D.N.Y.1995) (same); *Kuechler v. 805 Middlesex Corp.,* 866 F.Supp. 147 (S.D.N.Y.1994) (same).

■ In the court's view, the date of injury rule " 'reflects a policy that there must come a time after which fairness demands that a defendant should not be harried,' along with 'a balancing sense of fairness to the [plaintiff] that [s]he shall not unreasonably be deprived of [her] right to assert [her] claim.' " *Piper,* 219 A.D.2d at 61, 639 N.Y.S.2d at 626 (citing *Caffaro v. Trayna,* 35 N.Y.2d 245, 250, 360 N.Y.S.2d 847, 850–851, 319 N.E.2d 174, 177–178 (1974)). The court therefore adopts the date of injury rule as it believes this test is the best method for determining the accrual of RSI cases and is the method that will be adopted by the New York Court of Appeals.

■ Applying the date of injury test to the instant action, the court observes that plaintiff Debra Evans testified at her deposition that in July, 1988, she began experiencing symptoms of her carpal tunnel syndrome in her left hand and, as her medical records indicate, in the fall of 1988 she began experiencing symptoms of carpal tunnel syndrome of her right hand.[7] *See* Affidavit of Marylou K. Roshia, Esquire (June 28, 1996) ("Roshia Aff."), exh. "A," (deposition transcript of Debra C. Evans (December 28, 1994) at 27, 42), exh. "B," (medical records). Therefore, according to the record before the court, the latest plaintiff's cause of action could accrue is in July 1988 for her left hand and September 1988 for her right hand. Although, as defendants point out, plaintiff's September 23, 1988 medical records set forth that plaintiff had been experiencing "progressive discomfort" over "the past six months," such evidence creates no more than a question of fact and cannot serve as the basis for granting summary judgment against plaintiffs at

---

**6.** The court is not bound by the *Blanco* decision. *See In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d at 850 (federal court not bound by decisions of lower state courts).

**7.** While it is difficult to ascertain from the record before the court, it appears plaintiff continued to use the keyboard or keyboards in issue after she experienced the onset of symptoms of her RSI injuries. Therefore, the earlier measuring date under a date of injury test is plaintiff's onset of symptoms, not the date of last use of the keyboard or keyboards.

this stage in the litigation.[8] *See* Roshia Aff., exh. "B."

Plaintiffs commenced their action against defendant Visual Technology on June 20, 1991, and a question of fact exists as to whether it is within three years of when the record reveals plaintiff Debra Evans testified and the medical records show that she developed symptoms of her carpal tunnel syndrome. Therefore, the court must deny defendant Visual Technology's motion for summary judgement. *See* N.Y.C.P.L.R. § 3018(b) (McKinney 1991); *Martin*, 60 N.Y.2d at 428, 469 N.Y.S.2d at 929, 457 N.E.2d at 1156 (it is the defendant's burden to establish the defense of untimeliness);

Plaintiffs commenced their action against defendant Ontel on March 20, 1992, and against defendant Lockheed on May 12, 1992, in both instances more than three years after plaintiff Debra Evans testified that she developed symptoms of her carpal tunnel syndrome in her left hand and more than three years after her medical records indicate she developed symptoms in her right hand. *See* Roshia Aff., exh. "A," "B." Therefore, the court grants defendants Ontel and Lockheed's motions for summary judgment.[9]

## III. CONCLUSION

Accordingly, for the reasons stated herein, defendants Ontel Corporation and Lockheed

Corporation's motions for summary judgment dismissing plaintiffs' complaints as barred by the statute of limitations are GRANTED. Defendant Visual Technology Incorporated's motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

8. Ontel and Visual Technology asserted that "[t]he uncontroverted evidence shows onset of symptoms is March of '88, that's more than three years in advance of the filing of suits." Tr. at 9, 24. In support of this assertion, Ontel and Visual Technology referred the court to page 13 of Dr. Hootnick's deposition transcript. Tr. at 24. While Dr. Hootnick does testify that his notes, made in September, 1988, reflect that plaintiff told him that she had experienced symptoms during the preceding six month period of time, he also candidly stated that "I wouldn't know the exact onset of the right-handed symptoms but my *assumption* would be that both hands were bothering her at the time." Affidavit of Henry Jos. Nowak, Esquire (July 26, 1996), exh. "E," (deposition transcript of David R. Hootnick, M.D. (April 16, 1996) at 13) ("Hootnick Tr.") (emphasis added). Dr. Hootnick went on to testify, "in other words, it may have been sometime during the six months or it could have been contemporaneous with the left hand. I don't know that for sure." Hootnick Tr. at 14. Accordingly, Dr.

Hootnick's testimony, independent of whether the plaintiff controverted it, does not conclusively establish that the plaintiff experienced symptoms in March, 1988, more than three years before the complaint was filed against Visual Technology.

9. Plaintiff Mitchell Evans' claims are contingent upon the success of the claims of plaintiff Debra Evans. *See Liff v. Schildkrout*, 49 N.Y.2d 622, 632, 427 N.Y.S.2d 746, 749, 404 N.E.2d 1288, 1291 (1980) (under New York law, a claim for loss of consortium is a derivative action and does not exist "independent of the injured spouse's right to maintain an action for injuries sustained."). Therefore, to the extent plaintiff Debra Evans' action is dismissed against defendants Ontel and Lockheed, Mitchell Evans' action must also be dismissed. *See Cody v. Village of Lake George*, 177 A.D.2d 921, 576 N.Y.S.2d 912, 913 (3d Dep't 1991) (termination of plaintiff's action for untimeliness barred husbands derivative action).